GLICKSTEIN, Judge,
dissenting.
To this child’s misfortune, I fear the majority opinion has missed the key question in this ease, which is whether we should relinquish jurisdiction to the trial court in order to obtain an adequate record upon which to decide whether the trial court acted reasonably in its decision as to child support.
In the musical play “Man of La Mancha,” Don Quixote’s loyal squire laments that whether the pitcher hits the stone or the stone hits the pitcher, it is going to be bad for the pitcher. At stake here is the welfare of an unrepresented twelve-year-old; and we should be very sure that the child does not become the pitcher and our judicial system, the stone.
In my view the trial judge could not have reasonably deprived this twelve-year-old boy of child support in the sum of $100 per week based on the information in the record. The mother’s affidavit, filed in support of her “complaint for modification,” showed the following monthly household expenses attributable to the parties’ child:
Rent $ 47.93
Food 120.00
Clothing 50.00
Incidentals 40.00
Medical and dental 40.00
Transportation[1] 30.00
Recreation 100.00
Utilities 35.00
Maintenance of home 10.00
$472.93
While the mother did not provide a transcript of the reported hearing, Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1979), was not intended to deprive infants of their day in court. It imposed upon competent adult parties the responsibility of providing an adequate record. Here, the child is penniless and unrepresented; and the mother may well be without funds of her own to provide us with a transcript. Even without such, the record shows that the parties agreed, when their son was only three years old, to weekly child support of $25. That was in 1976 when the marriage was dissolved. The trial court here merely increased that figure to $50 per week. In T. Espenshade, Investing in Children, New Estimates of Parental Expenditures, (The Urban Institute Press 1984), the author points out the following inflation adjustments between 1972-1973 and 1981 for specific categories of consumption:
Category of Consumer Price Index (1967 = 100) Ratio of 1981 Consumer Price Index to 1972
Consumption 12/72 6/81 Consumer Price Index
Food at Home 124.1 268.7 2.165
Food away from Home 133.7 290.6 2.174
Shelter 136.8 312.6 2.285
Fuel & Utilities 121.9 320.2 2.627
Household Furnishings 119.5 221.1 1.850
Clothing 125.0 185.8 1.486
Transportation 121.3 279.9 2.308
Medical Care 134.4 291.5 2.169
Entertainment 127.5 220.8 1.732
Other Foods and Services 129.2 233.4 1.807
See id. at 24.[1] Accordingly, all the trial court did in this case was to give the child a *1259 credit for inflation, as though he will always be three years of age.
This child, like all others, has continued to grow, however, rather than remaining in a time warp. As Dr. Espenshade notes:
As children age they tend to become more expensive. If we divide the first 18 years of a child’s life into three equal age groups, in general we find that approximately 26 per cent of total child-related expenditures to age 18 arise at 0-5, and roughly equal amounts occur at ages 6-11 (36 percent) and 12-17 (38 percent).
Id. at 4.
He states that a low socioeconomic status family with one child would spend $58,-300 on that child in the eighteen-year period, assuming the mother is not employed outside the home. In a middle income family, the amount is $82,400. Id. at 3. At $25 per week, this mother would have received $23,400 in child support over 18 years (52 weeks X 18 x $25). Here, the trial court doubled it to $50, or $46,800.
What about the father’s income and ability to pay in this case? Had a guardian ad litem been representing the child, we would undoubtedly have before us, if not an expensive transcript, at least a statement of the evidence that would answer that question, while simultaneously conforming to the requirements of Florida Rule of Appellate Procedure 9.200(b)(3). Here, we have neither.
In addition to all of the foregoing, two factors require, in my view, our relinquishing jurisdiction with direction to the parties to provide a transcript or proper statement of the evidence as to the father’s income in order to prevent the manifest injustice which the present affirmance visits upon the child.
First, the mother’s trial memorandum alleges (a) that the father’s income has risen steadily and that he earned approximately $28,000 from his employment in 1982; (b) that he has not remarried; (c) that he is the owner of his own home and several vehicles; and (d) that he supports no one other than himself and the parties’ child.[2]
Second, the trial court’s order recites a number of material considerations:
A. The father’s income is greater now than at the time of dissolution. The petition for dissolution recites he was employed as a sheet metal “apprentice” in 1976, earning $7.14 per hour. The trial memorandum described him as a sheet metal “worker” in 1979.
B. The mother and her present husband “testified that they have possessed a controlled substance cannabis, within the last year.” A copy of the order was, unex-plainedly, sent by the trial court to the office of the state attorney. If the child has been deprived of adequate child support for this “possession,” clearly such action is without justification. Such conduct of the mother may relate to primary residential responsibility, which was not an issue at the time of the hearing, but has nothing to do with the child’s need for support.
In sum, if the mother’s trial memorandum correctly states the father’s income, the father’s newly doubled contribution to the child’s support amounts to less than ten percent of his gross income. The father’s alleged income of $28,000 would justify classifying him economically in the middle class. Is not the child, then, entitled to the support ordinarily afforded a lone child by a family of middling socioeconomic status? Yet the increased child support, extrapolated for eighteen years, is less than half of what a middle class family would spend, and only 80% of what a low socioeconomic status family would spend.
Effectively, the trial court has only reaffirmed the original, unrealistic, drop-in-the-bucket $25 a week, support award, as *1260 the increase to $50 merely accounts for the effect of inflation in the period intervening since 1976. If the mother’s report of the father’s earnings and limited other responsibilities is accurate, the level of support granted this child is unconscionable.
The issue, as stated in the majority opinion, was accurately quoted from the mother’s brief. My concern is our refusal to determine how the trial court ruled as it did, given all of the red flags before us as to the child’s needs as well as the hints of the father’s clear ability to pay more.
Children in Florida, unlike some other states, do not have the benefit of statutory guidelines which trial judges must apply in determining child support. See R. Williams, Development of Child Support Formulas (Mar. 28, 1985) (prepared for April 1985 ABA National Conference on Child Support Practice). Even without such guidelines, however, if the trial court becomes concerned over a mother’s use or possession of marijuana, then the child still must receive that child support which he needs and the father can pay. Here, the trial court made no findings of fact to substantiate the increase, which I consider to be insufficient, given the small sum spelled out in the parties’ original agreement and all of the other economic facts of life which I have recited. We know that the trial court sent a copy of its order to the state attorney, which I equate, in the absence of explanation, to an untoward concern with the evidence of possession of marijuana. Whether the child is being made to suffer for the mother’s indiscretion is the unanswered question in this case. By relinquishing jurisdiction, we would know what reasonable basis, if any, existed for the increase to only $50 per week. Surely the trial court and this court would opt for light instead of heat when a child is involved.
In closing, I suggest that in making so much of the fact that the mother’s lawyer phrased the issue as he did, the majority has just emphasized the injustice being visited upon our unrepresented child, whose sole issue before this court is whether the facts are such that he needs — and his father can afford — twice the support he is receiving. The majority points out that the record supplied to the court does not support my concern that the amount of child support awarded may be unconscionably paltry. The record before us does not include a hearing transcript, without which, I maintain, no- proper review is possible.

. A recent report by John W. Graham, a University of Illinois economist, reflected that between 1978 and 1981, the average amount of child support per youngster increased 16 percent. In *1259 the same period, the Consumer Price Index increased 39 percent. Graham was recently quoted as saying, "Judges' perceptions aren’t keeping up with inflation.”

. The child is epileptic and is being treated for same. We have no idea of the amount of expense or the extent of coverage by the father’s insurance, if any, regardless of the question of income.